THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:08-CV-168-FL

PARTHENIA SIDBURY, )
)
    Plaintiff/Claimant, )
)
v. ) **MEMORANDUM AND**
) **RECOMMENDATION**
MICHAEL J. ASTRUE, Commissioner )
of Social Security, )
)
    Defendant. )

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Parthenia Sidbury ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB") payments. Claimant responded to Defendant's motion and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant filed an application for DIB and SSI payments on 6 June 2002, alleging disability beginning 15 February 2000.[1] (R. 199-202). Her claim was denied initially and upon

---

[1] Claimant filed a prior application for a period of disability and DIB on 26 June 2000, alleging disability since 15 February 2000. (R. 52-54). On 20 June 2001, an ALJ issued a decision denying Claimant's request for benefits. (R. 166-75). Claimant did not appeal the ALJ's decision.

reconsideration. (R. 179-94). Following a hearing on 25 September 2003, an Administrative Law Judge ("ALJ") issued a decision on 28 January 2004 denying Claimant's request for benefits. (R. 16-33, 382-14). On 27 May 2004, the Appeals Council denied Claimant's request for review. (R. 9-12). Claimant appealed the denial and, on 25 August 2005, the Court remanded this matter for further proceedings. (R. 439-52). A hearing before the ALJ was held on 27 February 2006, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 616-51). On 28 June 2006, the ALJ issued another decision denying Claimant's request for benefits. (R. 426-35). On 15 August 2008, the Appeals Council denied Claimant's request for review. (R. 415-17). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."

---

Accordingly, the portion of Claimant's current claim alleging disability prior to 21 June 2001 is barred by res judicata. *Albright v. Comm'r of the SSA*, 174 F.3d 473, 476 (4th Cir. 1999) (explaining "to the extent that a second or successive application seeks to relitigate a time period for which the claimant was previously found ineligible for benefits, the customary principles of preclusion apply with full force")

2

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of the treating physician's opinion; (2) improper assessment of Claimant's credibility; (3) improper

3

assessment of Claimant's residual functional capacity ("RFC"); and (4) failure to pose a hypothetical that adequately reflected Claimant's RFC. Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 17, 19, 25-26. ("Pl.'s Mem.").

## **FACTUAL HISTORY**

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 428). Next, the ALJ determined Claimant had the following severe impairments: (1) carpal tunnel syndrome; (2) status-post sub-arachnoid hemorrhage with headaches; and (3) left-sided weakness. (R. 429). The ALJ also found Claimant had nonsevere impairments of asthma and depression. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[2] with no climbing, crawling or balancing; occasional fingering or handling with her non-dominant hand; occasional exposure to the general public; no exposure to excessively loud noise; no requirement to project her voice; a sit and

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3. "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

stand option for 15 minutes out of every hour; the flexibility to use a cane while standing or walking and to prop her feet at a 45 degree angle while seated at work. (R. 430). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. *Id.* At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work. (R. 434). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 43 years old and unemployed. (R. 434, 616). Claimant testified that she obtained a General Educational Development credential. (R. 619). Claimant's past work experience includes work as a data entry clerk, janitor, receptionist, cashier and warehouse worker. (R. 622-23).

Claimant explained numerous medical conditions support her disability claim and her inability to work full-time. Claimant's left arm and hand are consistently numb. (R. 632). Claimant experiences several "minor" migraines a week but can experience up to 6 "major" migraines per month which can last more than one day. (R. 627-28). Claimant complained of constant aching and spasms in her buttocks, legs, back, shoulders, hand and arms. (R. 629). Claimant testified that medication reduces her spasms but does not prevent them. (R. 630). Claimant testified further that a side effect of her medication is the loss of her voice during the morning hours. (R. 625). Claimant experiences also leg and feet swelling, which is minimized somewhat by elevating her legs. (R. 630). Claimant attributes her forgetfulness and inability to concentrate to her depression, for which she takes medication. (R. 638-40).

As a result of her impairments, Claimant has been using a cane for almost two years. (R. 633). She is incapable of buttoning shirts or picking up items weighing more than a pillow with her left hand. (R. 636, 638). Claimant writes and types with her right hand only. (R. 637-38). Claimant estimated that she could stand for a total of three hours in an eight-hour work day; however, her legs become weak after twenty minutes of standing. (R. 634-35). Claimant estimated that she could sit a total of two hours during the course of an eight-hour work day but would require the ability to stand after forty-five minutes and to elevate her legs. (R. 635).

Claimant spends the majority of her day laying around. (R. 636). She performs no household chores, but is able to drive short distances and shop with the assistance of a cane or a motorized cart. (R. 632-33).

### III. Vocational Expert's Testimony at the Administrative Hearing

Dixon Pearsall, Ph.D., testified as a VE at the administrative hearing. (R. 643-650). After the VE's testimony regarding Claimant's past work experience (R. 643), the ALJ posed the following hypothetical without limitations as to skill level:

> [A]ssume a . . . worker the same age as [Claimant] with the same work background and education and retain the sedentary exertional capacity only with no climbing, crawling, or balancing; no more than occasional fingering and handling with the non-dominant arm and hand; a sit/stand option with the flexibility to exercise that sit/stand option for approximately 15 minutes during a working hour, in other words, 1/4 of the time; flexibility to use her cane while upright at work meaning standing or walking; no exposure to loud noise . . . No requirement to project her voice . . . no more than occasional exposure to the general public . . . flexibility . . . to prop her feet while seated at work and up to but not exceeding a 45 degree angle.

(R. 644). The VE testified that Claimant's past work would be eliminated by the conditions of the hypothetical. *Id.* In response to whether unskilled work exists that would accommodate the hypothetical, the VE responded the individual could perform the following sedentary positions

6

with a specific vocational preparation ("SVP") time of 2 and provided DOT classification citations along with the number of jobs available in the local and national economies: (1) weigher/weight testers - DOT 539.485-010, 1,000 locally, 38,000 nationally; (2) table worker/inspector - DOT 739.687-182, 2,000 locally, 80,000 nationally; (3) surveillance monitor - DOT 379.367-010, 1,600 locally, 68,000 nationally. (R. 645). The VE explained his testimony is consistent with the DOT, with the exception of the sit and stand option, the flexibility to elevate one's feet and the noise and voice projection limitations, which were based on the VE's personal observations and professional knowledge. *Id.* The VE testified that all work be eliminated if absences exceeded three days per month or if an individual needed to lie down the majority of the work day. (R. 646-47).

## DISCUSSION

**I.     The ALJ improperly evaluated the credibility of Claimant's statements.**

Claimant contends the ALJ failed to adequately evaluate the credibility of her testimony. Pl.'s Mem. at 17-19. In particular, Claimant argues that the ALJ improperly assessed Claimant's testimony regarding the severity of her headaches, her left-sided weakness and her voice limitations.[3] *Id.*

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. § 404.1529(c)(1); Soc. Sec. Rul. ("S.S.R.") 96-7p, 1996

---

[3] Claimant's credibility argument focuses solely on her headache pain and the limitations resulting therefrom. *See* Pl.'s Mem. at 17-19. However, within the remaining arguments raised in her memorandum, Claimant contends that the ALJ also improperly evaluated Claimant's complaints of left-sided weakness and the loss of voice during the morning hours. *See id.* at 24-26.

7

WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. § 404.1529(c)(4); S.S.R. 96-7p, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. S.S.R. 96-7p, 1996 WL 374186, at *4; *see Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Here, the ALJ found that "claimant's medically determinable impairments could have been reasonably expected to produce certain of the alleged symptoms, but that [her] statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (R. 430).

*A.     Left-Sided Weakness*

The Court finds that the ALJ's conclusion that symptoms from Claimant's left-sided weakness are not as limiting as Claimant's describes is supported by substantial evidence. In evaluating Claimant's complaints of left-sided weakness, the ALJ noted the following: (1) Claimant's description of daily activities (which include caring for her young daughter, washing dishes and attending church) during her 20 August 2002 examination with state agency consultant, Kim Abulsaad, Ph.D.[4] (R. 273); (2) progress reports by Alfred DeMaria, M.D.,

---

[4] These activities contradict Claimant's February 2006 testimony wherein Claimant's stated she is unable to perform housework and relies on her eighteen year-old daughter to assist Claimant with

8

indicating unremarkable neurological examinations (R. 318, 321, 335, 431); (3) a July 2002 state agency examination performed by Ayman Gebrail, M.D., which revealed 5/5 muscle power, 2/2 muscle tone, a normal gait, a full range of motion in all joints without limitation or deformity and the ability to toe/heel walk without difficulty (R. 267-68, 431); (4) 11 December 2002 and 18 February 2003 progress notes by Janice Dickerson, M.D., Claimant's treating physician, indicating symmetrical muscle tone and 5/5 muscle strength (R. 353, 358); (5) an examination performed on 16 June 2003 by Alan Finkel, M.D., a treating neurologist, which revealed a normal gait and 5/5 muscle strength with good bulk and tone (R. 376, 432); and (6) no documentation suggesting that Claimant was prescribed a cane by any of her treating physicians (R. 433). Nonetheless, the ALJ limited the amount Claimant can sit, stand, walk, climb, crawl or balance, provided a sit or stand option, and provided Claimant the flexibility to use a cane and to elevate her feet at a 45-degree angle while seated. (R. 433).

B.  *Voice Limitations*

The ALJ's credibility determination with respect to Claimant's voice limitation is also supported by substantial evidence. While Claimant contends the ALJ should have restricted her from having to speak during the morning work hours, *see* Pl.'s Mem. at 26, Claimant cites no objective evidence supporting such a limitation and the Court can find none in the administrative record. Indeed, the only records found by the Court regarding Claimant's voice are (1) an April 2001 progress report wherein Claimant denied any speech or language problems (R. 155); (2) an August 2002 consultative examination by Dr. Abulsaad, who noted that Claimant's "speech was mumbled and in a very low voice to the point that it was quite difficult to understand what she

---

the care of Claimant's younger child. (R. 430)

was saying" (R. 24, 273); and (3) Claimant's testimony during the February 2006 administrative hearing wherein the ALJ admitted difficulty understanding Claimant and accordingly requested that Claimant's counsel summarize the testimony (R. 620). As the ALJ noted in his January 2004 decision,[5] however, Dr. Abulsaad explained that Claimant appeared "intent on presenting herself as severely disabled" and that Claimant's "conduct throughout the examination from the first moment was to convince [Dr. Abulsaad] about how [Claimant] is depressed." (R. 23-24, 273, 429). As for Claimant's testimony, the ALJ acknowledged during the hearing that he could understand Claimant's responses and no longer required summaries thereof by her counsel. (R. 627). Yet, despite the lack of objective medical evidence and incorporating Claimant's subjective complaints, the ALJ restricted Claimant from work that requires her to project her voice. (R. 433).

C.   *Migraine Headaches*

The Court, however, cannot conclude that the ALJ's credibility finding regarding Claimant's headaches is supported by substantial evidence. In discounting Claimant's complaints of pain associated with her headaches,[6] it appears that the ALJ relied, at least in part, on a lack of

---

[5] The ALJ incorporated by reference the evidence summaries contained within his January 2004 decision into his June 2006 decision. See (R. 429) (explaining "the evidence summaries contained in the vacated decision to be in all respects full and fair statements of the underlying records.... All of the testimony and exhibits relating to the prior hearing are adopted by reference . . . "). Within the June 2006 decision, the ALJ noted again that Dr. Abulsad found that Claimant's depression appeared to be contrived for the examination. (R. 429).

[6] Claimant contends that as a result of her headaches, the ALJ should have included an allowance to lie down in quiet and darkness during the day at unpredictable intervals and to miss work more than three days a month. Pl.'s Mem. at 25.

objective evidence.[7] However, any such reliance by the ALJ was error as migraines cannot be diagnosed or confirmed through laboratory or diagnostic testing. *See Stebbins v. Barnhart*, No. 03-C-0117-C, 2003 U.S. Dist. LEXIS 25106, at *15, 2003 WL 23200371, at *10 (W.D. Wisc. Aug. 20, 2003) (noting that "there is no simple, specific diagnostic test for migraine headaches") (quoting Ausman & Snyder's Medical Library, Lawyer's Edition, § 6:27 at 97-98 (1990)); *Ortega v. Chater*, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996) (stating that "laboratory tests cannot prove the existence of migraine headaches"); *see generally Hua v. Astrue*, 07-cv-02249-WYD, 2009 U.S. Dist. LEXIS 20345, at *11 n.1, 2009 WL 524991, at *4 n.1 (D. Colo. Mar. 2, 2009) (collecting cases recognizing migraines are undetectable through imaging techniques or laboratory tests).

Consequently, signs and symptoms, such as nausea, vomiting, eye pain, aura, photophobia and phonophobia, are often the only means to prove the existence of migraine headaches and should be viewed as objective evidence. *Ortega*, 933 F. Supp. at 1075; *see also Thompson*, 493 F. Supp. 2d at 1215-16 n.8 (explaining "these symptoms are, in fact, medical signs which are associated with severe migraines") (citation omitted); *Duncan v. Astrue*, No. 4:06-cv-230-FL, 2008 U.S. Dist. LEXIS 1454, 2008 WL 111158, *6 (E.D.N.C. Jan. 8, 2008) (citing 20 C.F.R. §§ 404.1512(b)(1), 404.1528(b), 416.912(b)(1), 416.928(b)) (stating "[s]uch diagnostic techniques [i.e., diagnosing migraines through the presence of medical signs] are recognized by the Social Security Administration"). The record reveals that since December

---

[7] The Court notes that in reviewing Claimant's credibility, the ALJ cited the following: (1) a February 2003 progress report by Dr. Dickerson which indicated no focal or cerebellar findings (R. 353, 431); (2) an MRI in August 2003 that was suggestive of an aneurysm but showed no evidence of hemmorrhage or infarct (R. 30, 371, 431); (3) a cerebral angiogram in September 2003 that was negative for any aneurysm or other intracranial vascular legions (R. 30, 362-63, 431); and (4) a negative CT scan of Claimant's head in December 2004 (R. 568, 431).

11

2000, there have been multiple references to Claimant's continuing treatment for and/or continuing complaints of migraine headaches associated with photophobia and phonophobia (as well as complaints of nausea and vision problems, albeit on a much less frequent basis). (R. 130, 155, 266, 272, 316, 318, 321, 356-57, 364, 374-75, 360, 368, 520, 608-10, 613). The record reveals further that Claimant was prescribed a variety of medication for this condition. (R. 130, 155, 316, 318, 364, 374-75, 610, 613).

Moreover, in reaching his conclusion, the ALJ relied on statements by Claimant which the ALJ describes as inconsistent. *See* (R. 432) (stating "[a]lthough the inconsistent information provided by claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be reliable"). Upon review, the statements do not appear to be inconsistent. In particular, in summarizing a statement made by Claimant during a September 2003 follow-up with Alan Finkel, M.D., the ALJ notes that Claimant "admitted that her last headache was one month before" (R. 364, 432); yet, "Claimant testified [that same month] . . . to experienc[ing] daily headaches." (R. 432). However, this is an incorrect summary of Dr. Finkel's progress note. Rather, the progress note provides that Claimant reported her last *severe* headache was one month prior but noted Claimant's continued complaint of *daily* headaches.[8] (R. 364). Accordingly, there is no inconsistency between Claimant's complaint of daily headaches during

---

[8] The Court acknowledges that in summarizing Dr. Finkel's report in his 2004 decision, the ALJ noted correctly that "the claimant reported her last *severe* headache was about a month ago . . . ." (R. 30) (emphasis added). The Court acknowledges further that in his 2006 decision, the ALJ adopted by reference the evidence summaries contained within the 2004 decision. (R. 429). However, the Court finds that the summary of Dr. Finkel's September 2003 progress note contained within the vacated decision does not shed light on how Claimant's statements to Dr. Finkel contradict those to which she testified in September 2003.

12

her September 2003 medical visit with Dr. Finkel and her testimony in September 2003 of the same. In fact, the record shows Claimant consistently complained of daily headaches. (R. 130, 364, 368, 374-75).

The ALJ noted correctly, however, that the record reveals that Claimant's headaches decreased in severity and frequency with treatment. *See e.g.*, (R. 364) (September 2003 progress note by Dr. Finkel noting Claimant's report that her headaches are "not having as much impact and [are] certainly less severe"); (R. 608) (January 2005 progress note by Dr. Dickerson noting Claimant's report that "[h]er headaches are somewhat better"). Obviously, the lack of objective evidence did not prevent the ALJ from finding that Claimant's headaches constitute a severe impairment. (R. 429). Moreover, the ALJ found Claimant's statements credible in part based on the finding that Claimant cannot be exposed to excessively loud noise. (R. 430). Nonetheless, because any reliance of the ALJ on a lack of abnormal diagnostic findings in evaluating Claimant's credibility is incorrect as a matter of law, and in light of the ALJ's reliance on inconsistencies not evident to the Court, the Court cannot conclude that the ALJ's determination that Claimant's statements regarding the limitations experienced as a result of her migraine headaches is supported by substantial evidence.

II.     **The ALJ erred in part in evaluating the opinion of Claimant's treating physician.**

Claimant contends the ALJ should have accorded controlling weight to the opinion of Claimant's treating physician, Janice Dickerson, M.D.

The opinion of a treating physician is generally entitled to great weight. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983). The underlying rationale is that the opinion of a treating physician "reflects an expert judgment based on a continuing observation of the patient's

condition over a prolonged period of time." *Id.* However, appropriate support in the record must warrant the deference shown to the treating physician's opinion. In particular, a treating physician's opinion on the nature and severity of the claimed impairment is accorded controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (citation omitted) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"). In fact, an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." *Wireman v. Barnhart*, No. 2:05cv00046, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006).

When the ALJ does not give the opinion of a treating physician controlling weight, he must weigh the opinion pursuant to the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. § 404.1527(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave

14

Case 7:08-cv-00168-FL Document 30 Filed 08/25/09 Page 14 of 17

to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The medical opinion at issue appeared in a declaration dated 23 July 2003, wherein Dr. Dickerson indicated Claimant is unable to work due to headaches that require Claimant "to lie down on many days," "weakness on the left side of her body that impairs her ability to walk or stand for prolonged periods," and carpal tunnel syndrome which "impair[s] her ability to perform work requiring grasping, pinching, or pulling on a repetitive productive basis over the course of a day." (R. 349). Dr. Dickerson concluded that when all Claimant's impairments are taken into account, Claimant is incapable of "perform[ing] regularly and reliably in the course of an 8 hour work day, 40 hours a week." *Id.* Noting Dr. Dickerson had treated Claimant only a few times since the initial evaluation in December 2002, the ALJ accorded Dr. Dickerson's opinion limited weight due to the lack of evidence supporting the opinion and because Dr. Dickerson "apparently relied on the claimant's subjective complaints in forming her opinion, which . . . are not reliable." (R. 432-33).

Substantial evidence supports the ALJ's decision to discount Dr. Dickerson's opinion as to the impact of Claimant's left-sided weakness and carpal tunnel syndrome on her ability to work. As the ALJ observed, Dr. Dickerson's "own examinations fail to place restrictions on the claimant's physical activity." (R. 351-59, 432). Moreover, medical examinations from other physicians do not support the limitations suggested by Dr. Dickerson. With respect to Claimant's left-sided weakness, as explained in detail above, physical examinations revealed normal muscle strength and tone, normal gait and a full range of motion in all joints without limitation or deformity (R. 267-68, 376, 431-31) - findings similar to those during made by Dr.

15

Dickerson in December 2003 and February 2003. (R. 353, 358). As for Dr. Dickerson's opinion regarding the limitations experienced by Claimant as a result of carpal tunnel syndrome, the ALJ noted the opinion "contrasts with Dr. Gebrail's finding . . . that the claimant was capable of performing activities of daily living." (R. 271, 432-33). The ALJ noted further that Claimant has not required surgery or injections for this condition. (R. 433).

Nevertheless, the ALJ failed to include in his analysis Dr. Dickerson's statements concerning Claimant's headaches and the limitations arising therefrom. As discussed in the credibility analysis above, the ALJ appears to have relied, at least in part, on a lack of objective evidence of migraine headaches and erroneously discounted Claimant's testimony based on an incorrect summary of a medical report. The ALJ compounded this error by failing to discuss Dr. Dickerson's statements, which appear to corroborate statements by Claimant and other medical professionals. Accordingly, the Court cannot conclude that the ALJ's decision not to give controlling weight to Dr. Dickerson's opinion with respect to migraine headaches is supported by substantial evidence.

Because this Court finds that remand on the issue of credibility and the treating physician's opinion will affect the remaining issues raised by Claimant, it does not address those arguments.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be GRANTED, Defendant's Motion for Judgment on the Pleadings be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 25th day of August, 2009.

*[signature]*
Robert B. Jones, Jr.
United States Magistrate Judge